# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 2:03CR10115 |
| v. | ) | **OPINION** |
| | ) | |
| CARLOS CARO, | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendant. | ) | |

*Rick A. Mountcastle, Assistant United States Attorney, Roanoke, Virginia, for United States; Dale A. Baich and Robin C. Konrad, Assistant Federal Public Defenders, Office of the Federal Public Defender, Phoenix, Arizona, and Fay F. Spence and Brian J. Beck, Assistant Federal Public Defenders, Roanoke and Abingdon, Virginia, for Defendant.*

Defendant Carlos Caro filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, alleging that ineffective assistance of counsel caused him to enter an invalid guilty plea. The United States filed a Motion to Dismiss the § 2255 motion as untimely filed, and Caro responded, arguing that he is entitled to equitable tolling. After review of the record, I find that the Motion to Dismiss must be granted.[1]

---

[1] The Motion to Dismiss has been fully briefed and orally argued.

I.

A Superseding Indictment was returned in this court on December 11, 2003, charged Caro, a federal inmate, and six others with conspiracy to commit murder and unlawful possession of a weapon arising from the stabbing of fellow inmate Ricardo Benavidez at the United States Penitentiary-Lee County ("USP Lee") on August 29, 2003. Caro and codefendant Juan Moreno-Marquez, the only inmates who actually stabbed the victim, were also charged with assault with intent to commit murder.

In May 2004, five of Caro's codefendants in the stabbing case each pleaded guilty to the unlawful weapon charge in exchange for dismissal of the conspiracy charge. The charges against Caro and Moreno-Marquez were set for a jury trial in August 2004.

Caro and Moreno-Marquez, through their respective attorneys, proposed a joint plea bargain, with Caro pleading guilty to conspiracy to commit murder in exchange for Moreno-Marquez being allowed to plead guilty to the lesser unlawful weapon charge. Caro's attorney, Louis Dene, advised Caro that the agreement did not benefit him and would result in a lengthy prison sentence. Caro told Dene that "'he wasn't going anywhere,' so the long sentence did not matter to him." (2255 Motion, Ex. 3, Dene Decl., ¶ 6, ECF No. 189-1.) Nevertheless, Caro instructed

Dene to pursue the linked plea agreements in order to mitigate the sentence of Moreno-Marquez, Caro's fellow Texas Syndicate gang member.

I accepted the plea arrangement, found both defendants' guilty pleas to be valid, sentenced Caro to 327 months for conspiracy to commit murder,[2] and sentenced Moreno-Marquez to 57 months for unlawful weapon possession. Judgment was entered on November 1, 2004, and Caro did not appeal.

Months before Caro entered his guilty plea to the conspiracy to commit murder charge in this case, on December 17, 2003, USP Lee officials found Caro's cellmate, Robert Sandoval, murdered in his cell, and Caro admitted killing him. The United States notified Caro in December 2004 of its intention to charge him with capital murder and seek the death penalty, and the court appointed counsel for Caro in January 2005 as to the potential capital charge. In January 2006, Caro was indicted for the capital murder of Sandoval. *United States v.* Caro, Case No. 1:06CR00001 (W.D. Va.).

---

[2] Caro's crime carried a Base Offense Level of 28, but I found that because of his prior convictions, he was a Career Offender under the then-mandatory sentencing guidelines. As such, his Adjusted Offense Level was 37, reduced by three levels for acceptance of responsibility, for a Total Offense Level of 34 and a custody range of 262 to 327months in prison. The 327-month sentence I imposed was directed to run consecutively to the 360-month sentence Caro was already serving for a prior federal drug conviction in Texas. I also imposed an alternative sentence of life in prison, based on the nature of Caro's offense and criminal history. *See United States v. Hammoud*, 378 F.3d 426, 426 (4th Cir. 2004) (advising courts to announce an alternative sentence, under 18 U.S.C. § 3553(a), treating the guidelines as advisory only), *judgment vacated and remanded,* 543 U.S. 1097 (2005).

At the time that Dene negotiated the Plea Agreement for Caro in the conspiracy to commit murder case, in June 2004, Dene knew that Caro had been implicated in the death of another inmate in December 2003. Dene understood that the government intended to proceed with a death penalty case against Caro after the conspiracy case concluded. Dene also knew that Caro had never completed high school, had limited ability to understand legal proceedings without counsel, and trusted Dene to advise him which legal choices were in Caro's best interest. Dene never advised Caro that he should reject the Plea Agreement and proceed to trial on the conspiracy to commit murder conviction, because this conviction, and the inevitable, lengthy sentence to be imposed for it, would likely be used against him in the looming capital case.

Caro was tried and convicted for capital murder in early 2007. The government listed Caro's conspiracy to commit murder conviction as an aggravating factor in its Notice of Intent to Seek the Death Penalty. In addition, the government pointed out during the penalty phase of the trial that Caro's prior federal prison sentences, totaling more than 57 years, constituted a life sentence for him. Based on that fact, the government argued, Caro would receive no

-4-

Case 2:03-cr-10115-JPJ   Document 202   Filed 05/04/15   Page 4 of 14   Pageid#: 681

punishment in the capital case unless death was imposed. The trial ended with a death sentence for Caro.[3]

Caro's § 2255 motion here alleges one claim of ineffective assistance: that Dene knew and should have advised Caro in June 2004 to reject the plea agreement and proceed to trial. Habeas counsel for Caro assert that during their interview of Dene on March 9, 2012, related to the capital case, Dene stated that he knew, but did not advise Caro, that his conspiracy conviction and sentence would likely be used against him in a capital murder prosecution. On March 11, 2013, less than a year after this interview, counsel filed Caro's § 2255 motion alleging that Dene's actions deprived Caro of the effective assistance of counsel, because Caro's guilty plea in the conspiracy case caused him to receive a death sentence in the capital case.

## II.

A person convicted of a federal offense has one year to file a § 2255 motion, starting from the latest of the following dates:

> (1) the date on which the judgment of conviction becomes final;

---

[3] The United States Court of Appeals for the Fourth Circuit affirmed the judgment, and the Supreme Court denied his petition for a writ of certiorari. *United States v. Caro*, 597 F.3d 608 (4th Cir.), *reh'g denied*, 614 F.3d 101 (4th Cir. 2010), *cert. denied*, 132 S. Ct. 996 (2012). A separate § 2255 motion challenging the capital murder conviction and death sentence was thereafter filed in Case No. 1:06CR00001, and has been denied by separate Opinion and Order entered this day.

-5-

Case 2:03-cr-10115-JPJ   Document 202   Filed 05/04/15   Page 5 of 14   Pageid#: 682

> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Caro's § 2255 is clearly untimely under § 2255(f)(1). The conspiracy to commit murder judgment became final on November 15, 2004, when his opportunity to appeal expired. *See* Fed. R. App. P. 4(b)(1)(A) (prior version); 6(a)(1) (prior version). Caro's one-year window under § 2255(f)(1) to file a timely motion expired on November 15, 2005. Because Caro filed his § 2255 motion on January 11, 2013, his motion is untimely under § 2255(f)(1) by more than seven years.

Caro alleges that his motion is timely under § 2255(f)(4), because he filed it within one year of the date when he first learned, with due diligence, the key fact necessary to his ineffective assistance claim, namely that in June 2004, attorney Dene knew the conspiracy to commit murder conviction and sentence would likely

be used against Caro to argue for a death sentence for Sandoval's murder. Habeas counsel assert that Caro, with his limited education and difficulty in understanding legal proceedings, could not have learned of Dene's error on his own soon enough to file a timely § 2255 motion. They also assert that Caro is entitled to equitable tolling because of his mental limitations and ineffective assistance from his later capital counsel. In addition to Dene's alleged failure to advise him to go to trial in his case, it is argued that his capital counsel in the Sandoval murder case should have advised him to challenge the prior conviction.

In response, the government asserts that Caro cannot show the due diligence required for equitable tolling. It points out that federal public defenders took over Caro's defense in the capital case appeal and that Caro has been thereafter always represented. By the time of his capital trial, at the latest, Caro knew both of the government's use of his prior guilty plea and the fact that Dene had not advised him that it would likely be so used. The government asserts that while Caro may have "social and intellectual deficits . . . [these] do not come close to establishing . . . incompetency . . . supporting equitable tolling." (Gov.'s Reply 5, ECF No. 198.)

### III.

To prove that counsel's representation was so defective as to require reversal of the conviction or sentence, Caro must meet a two-prong standard, showing that

counsel's defective performance resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, Caro must show that "counsel's representation fell below an objective standard of reasonableness," considering circumstances as they existed at the time of the representation. *Id.* at 687-88. Here, Caro must overcome a strong presumption that counsel's performance was within the range of competence demanded from attorneys defending criminal cases. *Id.* at 689.

Second, to show prejudice, Caro must demonstrate a "reasonable probability" that but for counsel's errors, the outcome would have been different. *Id.* at 694-95. When a criminal defendant alleges that counsel's pretrial error led him to enter an invalid guilty plea, he shows prejudice by demonstrating "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). If it is clear that the defendant cannot satisfy one aspect of the *Strickland* standard, the court need not inquire whether he has satisfied the other aspect of that standard. *Strickland*, 466 U.S. at 697.

Caro purports that his single claim of ineffective assistance meets the two elements of the *Strickland/Hill* standard in this manner: (a) counsel performed deficiently in failing to advise Caro to reject the plea and go to trial on the conspiracy to commit murder charge, because the conviction and sentence for that offense would likely be used to seek the death penalty in the murder case; and (b)

if counsel had advised Caro to reject the plea and go to trial, there is a reasonable probability that Caro would have followed that advice, because Caro had little education, had no ability to understand legal proceedings without counsel's help, and trusted counsel.

Although the Motion to Dismiss does not argue that Caro's claim itself is deficient, even if he wins on the timeliness arguments, I have authority to summarily dismiss Caro's § 2255 motion as without merit. *See* § 2255(b); Rule 4 of the Rules Governing § 2255 Proceedings. Because I find from the motion and the record that Caro not has satisfied either of the *Strickland/Hill* elements, I conclude that he is not entitled to relief under § 2255.

Caro argues that because the death sentence was such a severe collateral consequence of Caro's plea to the conspiracy charge, Dene had a per se obligation to advise Caro of this consequence. Caro relies on *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010), a case in which the Supreme Court cited American Bar Association professional standards as one basis for ruling that defense counsel was ineffective in failing to warn the defendant that his guilty plea would result in his deportation. In addition, Caro presents the opinion of a standard of care expert that Dene's omission of this collateral consequence warning was far below acceptable performance standards.

Caro's arguments ignore the importance of considering *all* the circumstances counsel faced in determining the sufficiency of his performance. *Strickland*, 466 U.S. at 687-88. In *Padilla*, the Supreme Court recognized that "[p]revailing norms of practice . . . are guides to determining what is reasonable." 559 U.S. at 366. In finding that Padilla's counsel did not satisfy the constitutional standard under *Strickland/Hill*, the Court considered more than counsel's failure to inform Padilla of all collateral consequences of the conviction as professional norms recommended.

> Instead, Padilla's counsel provided him false assurance that his conviction would not result in his removal from this country. This is not a hard case in which to find deficiency: The consequences of Padilla's plea could easily be determined from reading the removal statute, his deportation was presumptively mandatory, and his counsel's advice was incorrect.

*Id.* at 368-69. The Court reemphasized that counsel's constitutional obligation in plea context was to inform Padilla of "the advantages and disadvantages of a plea agreement," compared to the alternative of going to trial. *Id.* at 370 (internal quotation marks and citation omitted).

Taking Caro's evidence in support of his § 2255 motion as true, I do not find from Caro's evidence that Dene failed to fulfill this obligation. The circumstances

Dene faced in advising Caro were grim indeed. If the case had gone to trial,[4] the government would have presented evidence that Caro, Moreno-Marquez, and the other coconspirators were members of the Texas Syndicate gang. A prison employee would have testified that he saw Caro and Moreno-Marquez chasing the victim and stabbing him with knives. The government also had surveillance camera footage of the assailants' moving attack on the victim and of their retreat through the same area, their disposal of one weapon beside the television stand, and their later return to the television room. Physical evidence included medical records of the 28 stab wounds the victim suffered to his head and torso, the homemade Plexiglas knives officials recovered from the television stand and elsewhere in the television room, and DNA test results establishing that the victim's blood was on the clothing of both defendants. The government also had a statement from Moreno-Marquez admitting that "'We hit him like we hit Alcantara,'" referring to another inmate assaulted a month earlier by Texas Syndicate members at USP Lee. (Hr'g Tr. 16.)

Caro does not offer any evidence of a viable defense he could have presented at trial, in light of the government's strong case against him. He presents no evidence that the government would have considered a different plea bargain

---

[4] The government's evidence against Caro summarized here is taken from the prosecutor's presentation at the change-of-plea hearing (Hr'g Tr. 14-18, Aug. 3, 2004, ECF No. 182) and the Presentence Investigation Report ("PSR").

allowing Caro to plead to anything less than conspiracy to commit murder or that without the agreement he entered, he could have achieved a less severe sentence. The PSR indicates that if Caro had been convicted after a trial, he likely would not have received the three-level reduction for acceptance of responsibility, which would have resulted in a mandatory custody range of 360 months to life in prison.

Dene reasonably could have believed that Caro's conviction was a foregone conclusion. Clearly, regardless of whether Caro was convicted after a guilty plea or after trial, counsel also knew that he would have inevitably received a lengthy prison sentence and that his conviction and sentence would have been used against him at the capital trial. Under these circumstances, I cannot find that Dene performed deficiently in focusing his discussions with Caro on the advantages and disadvantages of the plea agreement relating directly to the case at hand.

Even if Dene's representation could be deemed deficient because he failed to tell Caro about a consequence that he faced, regardless of his choices in the conspiracy case, Caro cannot demonstrate prejudice. As the Court in *Padilla* emphasized, the prejudice prong in the guilty plea context requires more than a showing of what the defendant himself would have done with the information counsel failed to provide.

> [T]o obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.

-12-

559 U.S. at 372. Trial counsel's opinion that Caro would have gone to trial if counsel had advised him to do so is not sufficient to demonstrate prejudice under this standard. Caro does not submit his own affidavit, stating that he would have rejected the Plea Agreement if fully advised about the potential impact of his conspiracy conviction and sentence on the capital case. Even if he submitted such evidence, however, it would not prove that rejection of the plea bargain was a rational choice to make under the circumstances as a whole.

Caro offers no alterative course he could have taken to increase his chances for a lesser sentence in the conspiracy to commit murder case or to improve his odds on avoiding the death penalty in the capital case. By taking the plea bargain he allowed his prison gang associate to receive a lighter sentence, the result Caro desired.

IV.

For the stated reasons, I find no reasonable probability that absent counsel's alleged omission, it would have been a rational decision for Caro to have rejected the Plea Agreement and proceed to trial on all charges in this case. Therefore, I will summarily deny relief on his § 2255 claim under Rule 4 of the Rules Governing § 2255 Proceedings and terminate as moot the Motion to Dismiss this action as untimely filed.

A separate Final Order will be entered herewith.

DATED: May 4, 2015

/s/  James P. Jones
United States District Judge