**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>vs.<br><br>CARLOS DAVID CARO,<br><br>Defendant. | No. 2:03-cr-10115-JPJ<br><br>Motion to Alter or Amend Judgment Pursuant to Federal Rule of Civil Procedure Rule 59(e) |

Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, Defendant Carlos David Caro, through counsel, respectfully requests that this Court alter or amend the judgment in its Opinion (ECF No. 202), and Final Order (ECF No. 203), entered on May 4, 2015, by which the Court denied Mr. Caro relief on his motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, ECF No. 189. In accordance with Rule 11(c)(1) of the Local Civil Rules for the United States District Court for the Western District of Virginia, this motion is supported by the attached Memorandum of Points and Authorities.

Respectfully submitted this 1st day of June, 2015.

s/Robin C. Konrad
Jon M. Sands
Federal Public Defender
Robin C. Konrad (Alabama Bar No. 2194-N76K)
Office of the Federal Public Defender
District of Arizona
850 West Adams Street, Suite 201
Phoenix, Arizona 85007
robin_konrad@fd.org
Telephone: 602-382-2816
Facsimile: 602-889-3960

Fay F. Spence (Virginia Bar No. 27906)
Federal Public Defender's Office
210 First Street, SW, Suite 400
Roanoke, Virginia 24011
fay_spence@fd.org
Telephone:  540-777-0880
Facsimile:  540-777-0890

Brian J. Beck (Virginia Bar No. 78049)
Federal Public Defender's Office
201 Abingdon Place
Abingdon, Virginia 24211
brian_beck@fd.org
Telephone:  276-619-6080
Facsimile:   276-619-6090

Attorneys for Defendant
Carlos David Caro

**Memorandum of Points and Authorities in Support of Rule 59(e) Motion**

Although Rule 59(e) does not itself set forth grounds for altering a judgment, the Fourth Circuit recognizes three grounds for altering a judgment pursuant to the rule.  They are: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998). Thus, the rule permits a district court to correct its own errors, "sparing the parties and the appellate courts the burden of unnecessary appellate proceedings." *Id.* (quoting *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995)).

In this motion, Mr. Caro invokes the third ground. Specifically, he submits that this Court committed a clear error of law and misconstrued the record in such a way that its judgment, if allowed to stand, will result in a manifest injustice. For the reasons given below, the Court should exercise its discretion and grant Mr.

1

Caro's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (hereinafter "2255 Motion").

## I.        Factual Background

While this case was pending, Mr. Caro's cellmate was found dead in their cell, and Mr. Caro admitted to killing him. Mr. Caro's attorney, Louis Dene, anticipated that Mr. Caro would be prosecuted for the death of the cellmate and that the Government would seek the death penalty. Decl. of Louis Dene, Nov. 9, 2012 (hereinafter "Dene Decl."), attached as Ex. 3 to 2255 Motion, ECF No. 189-1. Nevertheless, Mr. Dene did not advise Mr. Caro that signing the plea agreement offered in this case essentially amounted to signing his death warrant in the anticipated capital case. Mr. Dene did not advise him that a conviction in this case for attempted murder would be used against him in the capital case as an aggravator in support of a death sentence, and that for this reason, Mr. Caro should not plead guilty. *Id.* ¶ 6. The plea agreement did not provide Mr. Caro with any benefit, such as a reduced sentence, as he would spend the rest of his life in prison whether he was sentenced after a guilty plea or after trial. Mr. Caro pled guilty, and on November 1, 2004, the court sentenced him to 327 months of incarceration. ECF No. 168.

On January 27, 2005, the Court appointed Stephen Kalista and James Simmons to represent Mr. Caro in his capital case. *See United States v. Caro*, No. 2:05-mc-00001-JPJ, Appt. Orders, Jan. 27, 2005, ECF Nos. 4, 6. On January 11, 2006, the Government filed its Notice of Intent to Seek Death, which stated the Government's intent to use Mr. Caro's prior conviction from this case as an aggravating circumstance in the capital case. *See United States v. Caro*, No. 1:06-cr-00001-JPJ, Notice, Jan. 11, 2006, ECF No. 8. At that time, capital counsel were aware that the conviction in this case would be used against Mr. Caro in securing a death verdict.

Although Mr. Kalista contacted Mr. Dene, he did not ask Mr. Dene about the reasons for Mr. Caro's guilty plea or Mr. Dene's advice to Mr. Caro. Dene Decl. ¶ 9. Moreover, despite knowing the conviction in this case would be used against their client at trial, capital counsel did nothing to challenge Mr. Caro's prior conviction. Declaration of Stephen Kalista, Dec. 31, 2012, ¶ 22, attached as Ex. 5 to Resp. to Mot. to Dismiss, ECF No. 196-1. Mr. Caro's capital case went to trial, and the Government, as it had indicated, relied upon Mr. Caro's conviction and sentence in the instant case during the penalty phase to support a death verdict. *See Caro*, No. 1:06-cr-00001, Tr. Feb. 13, 2007, at 26–27 (arguing that another life sentence would be "like water off a duck's back" and that "[Caro would] be getting a pass" for killing Roberto Sandoval); *id.* at 42 (arguing that Mr. Caro's prior sentence was the equivalent of a life sentence); *id.* at 89 (arguing that unless sentenced to death, Mr. Caro will return to prison as "a conquering hero"). The jury returned a death verdict, *see Caro*, No. 1:06-cr-00001-JPJ, Special Verdict Form, Feb. 13, 2007, Dkt. 639, and Mr. Caro was sentenced to death, *id.*, Judgment, March 30, 2007, Dkt. 694.

## II.    The Court Should Correct the Manifest Errors of Law and Fact Upon Which the Judgment Rests

Acting through counsel, Mr. Caro filed his 2255 Motion on January 11, 2013. ECF No. 189. The Government subsequently filed a Motion to Dismiss the 2255 Motion. ECF No. 195. Mr. Caro filed an opposition to the Motion to Dismiss, ECF No. 196, and the United States filed a reply to Mr. Caro's opposition, ECF No. 198. After hearing oral argument, ECF No. 199, the Court summarily denied relief on the 2255 Motion, and terminated the Motion to Dismiss as moot. ECF No. 202 at 13; ECF No. 203 at 1. The Court's decision contains critical errors that warrant altering the judgment.

First, the Court erred by misinterpreting the rationality requirement in *Padilla v. Kentucky*, 559 U.S. 356 (2010). "Rational," as that term is used in

*Padilla*, goes by its plain meaning: based on facts or reason. It does require something higher than rationality, as the Court erroneously determined. Second, the Court erred by failing to consider viable defenses available to Mr. Caro and instead concluding that the "circumstances Dene faced in advising Caro were grim indeed"—so grim that "regardless of whether Caro was convicted after a guilty plea or after trial, counsel also knew that he would have inevitably received a lengthy prison sentence and that his conviction and sentence would have been used against him at the capital trial." ECF No. 202 at 10-12. But the circumstances were not altogether grim, and despite the Court's assumption otherwise, his conviction and sentence at trial were not foregone conclusions. The Court erred by ignoring this possibility and instead focusing on the prosecution's case against Mr. Caro. ECF No. 202 at 11. The Court thus committed clear errors and its judgment, if allowed to stand, would result in a manifest injustice.

> **A.    The Court erred by imposing a higher standard than the rationality requirement of *Padilla* and thereby failed to consider that Mr. Caro would have rejected the plea agreement and proceeded to trial had he received effective assistance of counsel.**

In *Padilla*, a petitioner convicted on drug-related charges filed a motion for post-conviction relief, alleging that his attorney was ineffective in misadvising him about the potential for deportation as a consequence of his guilty plea. *Padilla*, 559 U.S. at 359. He alleged that he would have insisted on going to trial if he had not received incorrect advice from his attorney. *Id.* In applying *Strickland* to the petitioner's claim, the United States Supreme Court explained that, "to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances. There is no reason to doubt that lower courts—now quite experienced with applying *Strickland*—can effectively and efficiently use its framework to separate specious claims from those with substantial merit." *Padilla*, 559 U.S. at 372 (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000) (holding that "counsel has a

constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think . . . that a rational defendant would want to appeal")).

Thus, "rational," as that term is used in *Padilla*, goes by its plain meaning: based on facts or reason. It does not mean highest or best, as this Court suggests when pronouncing that "[t]rial counsel's opinion that Caro would have gone to trial if counsel had advised him to do so is not sufficient to demonstrate prejudice under this standard." ECF No. 202 at 13.  The fact that Mr. Caro would have gone to trial if counsel had advised him to do so plainly satisfies the rationality requirement. As the Supreme Court made clear, the rationality requirement is about separating the "specious claims from those with substantial merit." *Padilla*, 559 U.S. at 372 (citing *Roe*, 528 U.S. at 480). Mr. Caro's 2255 Motion establishes that his claim has substantial merit. It further establishes that his claim is a rational one. This Court therefore erred in concluding, on the basis of the rationality requirement, that "[t]rial counsel's opinion that Caro would have gone to trial if counsel had advised to do so is not sufficient to demonstrate prejudice under this standard." ECF No. 202 at 13. The Court's imposition of a higher standard that *Padilla* requires is clear error.

> **B.  The Court erred by failing to consider the various avenues of defense available to Mr. Caro and instead concluding that Mr. Caro would have inevitably received a lengthy prison sentence that would have been used against him at the capital trial.**

The Court faults Mr. Caro for not offering "any evidence of a viable defense he could have presented at trial," ECF No. 202 at 11, and cites this alleged lack of evidence as support for the conclusion that Mr. Dene fulfilled his obligations, *id.* at 10-11. In the view of the Court, Mr. Dene "could have believed that Caro's conviction was a foregone conclusion," in which case he rightly "focus[ed] his discussions with Caro on the advantages and disadvantages of the plea agreement" rather than the trial. *Id.* at 12. The Court's speculation as to what Mr. Dene "could have believed" is inappropriate when dismissing the case on the pleadings. As this

Court recognized in its opinion, it must take the evidence supporting the 2255 Motion as true. ECF No. 202 at 10. The fact is, however, that Mr. Caro had an available avenue of defense.

On August 29, 2003, inmate Ricardo Benavidez was attacked and received multiple stab wounds at United States Penitentiary ("USP")-Lee. Seven prisoners, including Mr. Caro, were implicated in the stabbing and charged with conspiracy to commit murder and possession of weapons. ECF No. 2. The grand jury testimony presented by the Government demonstrated that Benavidez had been the leader of a gang called the Texas Syndicate at USP-Lee prior to his assault, but that the current leader of the gang was a prisoner by the name of Francisco Tijerina, who was also a defendant charged in the Benavidez stabbing. *See United States v. Caro*, No. 1:06-cr-00001-JPJ, Dkt No. 782, Sealed Ex. 28 at 15 (W.D. Va.). When a juror asked "why the [gang] would attack their own leader," the officer testified that he believed that Tijerina wanted to "assume the leadership role of the Texas Syndicate" as USP-Lee. *Id.* at 18. The SIS Officer also concluded that all seven of the inmates conspired in the crime, but that the "attack was planned by inmate Tijerina . . . in an attempt to gain control of the Texas Syndicate Leadership" at USP-Lee. *United States v. Caro*, No. 1:06-cr-00001-JPJ, Dkt No. 782, Sealed Ex. 51 at 12. Six of the seven inmates were allowed to plead to the lesser possession of a weapon charge, including Mr. Tijerina.

Although the Court sets forth what it believes was a solid case against Mr. Caro, ECF No. 202 at 11, the Government's case was not as strong as the Court suggested as so admitted by the Government. At the time of one of Mr. Caro's codefendant's sentencing, the Court asked the Government why it should impose such a low sentence. ECF No. 184 at 5. In responding to the Court, the Government did not mention either a prison eyewitness or the DNA evidence—both of which this Court relied upon in its dismissal of Mr. Caro's 2255 Motion, ECF No. 202 at 11. And Government explained that the video—that this Court also

6

relied upon—was not "of high quality." ECF No. 184 at 5. Based on the Government's representation of the evidence, it was not certain that Mr. Caro would have been convicted if he went to trial. In fact, a valid defense could have been to challenge the strength of the Government's case, including its ability to prove a conspiracy.

To the Court, a "custody range of 360 months to life in prison" following a conviction at trial was a foregone conclusion. ECF No. 202 at 12. A trial, the court surmised, would have offered little or no advantage when compared to the nearly identical terms of the plea agreement. *Id.* at 12 (stating that Mr. Caro "would have inevitably received a lengthy prison sentence"). However, Mr. Caro had a viable defense, and the Court erred by ignoring this possibility. ECF No. 202 at 11. The Court thus committed clear error and its judgment, if allowed to stand, would result in a manifest injustice.

### C.    This court should grant Mr. Caro a certificate of appealability on this claim.

This Court erred in denying a certificate of appealability (COA) on the claim presented in Mr. Caro's 2255 Motion. Mr. Caro need only make "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and demonstrate that reasonable jurists could debate the Court's resolution of the claim. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "In requiring a question of some substance, or a substantial showing of the denial of [a] federal right, obviously the petitioner need not show that he should prevail on the merits. He has already failed in that endeavor." *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (internal quotations omitted). "[T]he holding in *Slack* would mean very little if appellate review were denied because the prisoner did not convince a judge . . . that he or she would prevail." *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003). As the *Miller-El* Court noted, "[t]his threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims." *Id.* at

7

336.

Although this Court denied Mr. Caro relief by finding that his claim was meritless, for the reasons explained above, Mr. Caro has made a substantial showing that he was denied his constitutional right to counsel; and reasonable jurists could debate this Court's resolution of the claim. As such, the Court clearly erred in denying a COA and should amend its judgment accordingly.

## III.   Conclusion

For the foregoing reasons, Mr. Caro requests that the Court alter its Opinion and Final Order in this case and grant Mr. Caro appropriate relief.

**Certificate of Service**

I hereby certify that on June 1, 2015, I electronically filed the foregoing Motion to Alter or Amend Judgment Pursuant to Federal Rule of Civil Procedure 59(e) with the Clerk's Office by using the CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/ Stephanie King
Legal Assistant
Capital Habeas Unit