**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 2:03-CR-10115** |
| **v.** | ) | |
| | ) | |
| **CARLOS DAVID CARO,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO ALTER OR AMEND
JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 59(e)**

The United States of America, by counsel, opposes Defendant's Motion to Alter or

Amend Judgment Pursuant to Federal Rule of Civil Procedure 59(e) because the Court did not

commit a clear error of law nor was there manifest injustice when it summarily denied Defendant

Carlos David Caro's ("Caro") claim for relief pursuant to 28 U.S.C. § 2255 ("§ 2255 Motion").

**Procedural History and Facts**

Caro filed a motion under 28 U.S.C. § 2255 on January 11, 2013, seeking to vacate, set

aside, or correct sentence imposed on November 1, 2004, following his guilty plea, pursuant to a

plea agreement, to conspiracy to commit murder.  The following facts are in the record before

the Court:

(1)    On August 29, 2003, Caro and co-defendant Juan Moreno-Marquez ("Moreno-

Marquez"), inmates at the United States Penitentiary-Lee County, attacked and, using

homemade knives, stabbed fellow inmate Ricardo Benavidez in the prison's recreation

room.  § 2255 Motion, pp. 1-2, ECF No. 189.

(2)    Five other similarly armed co-defendants were nearby but were denied access to

the recreation room and did not directly participate in the stabbing.  *Id.* at 2.

1

(3)    On December 11, 2003, the grand jury issued a superseding indictment charging Caro, Moreno-Marquez, and the five others with conspiracy to commit murder and unlawful possession of a weapon.  Opinion, p. 2, ECF No. 202.

(4)    On December 17, 2003, Caro's cellmate, Roberto Sandoval, was found dead in the cell and Caro confessed to killing him.  ECF No. 189 at 2.

(5)    Caro and Moreno-Marquez, through their respective attorneys, proposed a joint plea bargain calling for Caro to plead guilty to conspiracy to commit murder in exchange for the Government's agreement to allow Moreno-Marquez to plead guilty to the unlawful weapon charge.  ECF No. 202 at 2; *see also* Declaration of Louis Dene, Esquire, ¶ 5, ECF No. 189-1 (as part of his representation of Caro, Dene worked to obtain a plea agreement providing for Caro to plead guilty to the most serious offense of conspiracy to commit murder in exchange for the Government allowing Moreno-Marquez to plead to the lesser offense).

(6)    Dene advised Caro that if he pled guilty to the conspiracy to commit murder offense he would likely receive a long sentence, but Caro's reason for signing the plea agreement was to help the younger Moreno-Marquez leave the Bureau of Prisons while still relatively young.  ECF No. 189 at 3.

(7)    At the time Caro signed the plea agreement on June 29, 2004, Dene was aware of the Sandoval murder and anticipated that the Government would charge Caro with the murder and seek the death penalty.  *Id.*  Dene did not advise Caro that his conviction for conspiracy to commit murder and resulting sentence would likely be used against him in the later capital case, did not advise him to reject the plea agreement, and did not advise him to proceed to trial.  *Id.*

(8)    Dene was aware of Caro's limited education and limited ability to understand legal proceedings. *Id.* at 4. Dene believed that Caro liked and trusted him and has the opinion that if he had told Caro to go to trial, Caro would have followed his advice. *Id.*

(9)    Both Caro and Moreno-Marquez entered their respective guilty pleas on August 3, 2004, and the Government's summary of its evidence for both included the following:

(a)    Caro, Moreno-Marquez, and the five others were incarcerated at USP-Lee and were members of the Texas Syndicate gang;

(b)    A prison employee saw Caro and Moreno-Marquez chasing Benavides and stabbing him with knives;

(c)    Surveillance camera footage showed the attack, the disposal of the knives, and the defendants' return to the location of the attack;

(d)    Medical records documented that Caro and Moreno-Marquez inflicted 28 stab wounds to the victim;

(e)    The homemade knives were recovered from the place where the surveillance video showed that Caro and Moreno-Marquez disposed of them; and

(f)    DNA test results showed the victim's blood on the defendants' clothing.

ECF No. 202 at 11; *see also* Transcript of Change of Plea Hearing for Moreno-Marquez, pp. 12-13, ECF No. 183 (summarizing evidence against Moreno-Marquez).

(10)    On November 1, 2004, the Court sentenced Caro to serve 327 months in prison, consecutive to the 360-month sentence he was already serving from the Northern District of Texas. ECF No. 189 at 4.

(11)     On November 2, 2004, the Court sentenced Moreno-Marquez to 57 months in prison.  During that hearing, the Court asked the Government to explain why it was appropriate to accept Moreno-Marquez's plea agreement when there was evidence that he participated in the stabbing and when Caro had received a lengthy sentence for his role in the attack.  Government counsel advised the Court that the plea agreements of Caro and Moreno-Marquez were linked and that the Government believed that the linked plea agreements were in the best interests of the Government because Caro appeared to be the most culpable of all of the co-defendants and because of obvious problems of a trial with an uncooperative victim and a somewhat unclear surveillance video.  Transcript of Sentencing of Moreno-Marquez, pp. 5-6, ECF No. 184.

(12)     The conspiracy to commit murder judgment became final on November 15, 2004, when Caro's opportunity to appeal expired.

(13)     In December 2004, the Government notified the Court of its intent to seek the death penalty against Caro for the murder of Sandoval.  ECF No. 189 at 4.

(14)     As early as February 13, 2007, Caro gained knowledge of the Government's use of his conviction and sentence in this case as an aggravating circumstance to argue for the death penalty in his trial for the Sandoval murder.  ECF No. 189 at 4-5.

(15)     On January 11, 2013, Caro filed this § 2255 Motion.  ECF No. 189.

On May 4, 2015, after review of the record and briefs and after oral argument, this Court summarily denied Caro's § 2255 motion.  It did not rule on the Government's motion to dismiss the § 2255 action as time-barred, instead denying that motion as moot.

Caro now moves, pursuant to Federal Rule of Civil Procedure 59(e), for the Court to alter or amend its judgment claiming that the summary denial of his § 2255 motion was clear error and would result in manifest injustice.

### Standard of Review

A Rule 59(e) motion to alter a judgment is appropriate, among other reasons, to correct a clear error of law or prevent manifest injustice. *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing [body] on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Concrete Pipe & Products of California, Inc. v. Constr. Laborers Pension Trust for S. California*, 508 U.S. 602, 622 (1993). "A 'factually supported and legally justified' decision does not constitute clear error." *Leftridge v. Matthews*, Civil Action No. ELH-11-3499, 2013 WL 5604666, at *1 (D. Md. Oct. 10, 2013) (quoting *Hutchinson v. Staton*, 994 F.2d 1076, 1081-82 (4th Cir. 1993)). Mere disagreement with how the district court ruled does not support a Rule 59(e) motion. *Hutchinson,* 994 F.2d at 1082.

"[A] motion under Rule 59(e) is not authorized 'to enable a party to complete presenting his case after the court has ruled against him.'" *Pac. Ins. Co.*, 148 F.3d at 403 (quoting *In re: Reese,* 91 F.3d 37, 39 (7th Cir.1996) (internal citations omitted)). In general "reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." *Id.* (quoting 11 Wright et al., <u>Federal Practice and Procedure</u> § 2810.1, at 124 (2d ed. 1995)).

### Discussion

This Court summarily dismissed the § 2255 Motion because the motion and the record established that "Caro [has not] satisfied either of the *Strickland/Hill* elements." In particular, the Court:

(1)     "[Did] not find from Caro's evidence that Dene failed to fulfill [the] obligation [to inform Caro of 'the advantages and disadvantages of a plea agreement,' compared to the alternative of going to trial] (ECF No. 202 at 10 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 370 (2010) (internal quotation marks and citation omitted)); and

(2)     "[Found] no reasonable probability that absent counsel's alleged omission, it would have been a rational decision for Caro to have rejected the Plea Agreement and proceed to trial on all charges in this case." *Id.* at 13.

Caro asserts two grounds for his motion – first, he argues that the Court misapplied the rationality requirement set forth in *Padilla v. Kentucky*, 559 U.S. 356 (2010) and second, he claims that the Court erred by failing to consider the defenses available to Caro if he had proceeded to trial.  ECF No. 189 at 3-4.  Finally, Caro demands that the Court grant a certificate of appealability under 28 U.S.C. § 2253(c)(2).  *Id.* at 7.

The Rule 59(e) motion does ***not*** argue that the Court erred when it found that the record did not support Caro's claim that Dene's performance was deficient but, instead, focuses only on the Court's analysis of whether Caro was prejudiced by any alleged deficiency.  As described below, the Court's findings ***both*** that Caro failed to establish that Dene's performance was ineffective and that Caro failed to show that he suffered prejudice as a result of any alleged deficient performance are supported by the facts in the record and the summary dismissal was, therefore, correct.

### 1.     The Court's Finding that Dene Provided Caro With Effective Assistance in His Decision to Plead Guilty is Supported by the Evidence.

The Rule 59(e) motion does ***not*** challenge the Court's finding that Caro failed to establish that Dene's assistance with his guilty plea was deficient for failing to inform Caro of the

advantages and disadvantages of the plea bargain.  Accordingly, the Court should reject the motion on that basis alone.  In any event, the evidence in the record supports the Court's ruling.

Caro's § 2255 Motion claims that Dene provided ineffective assistance in connection with his guilty plea because Dene failed to advise him that a collateral consequence might be the prosecution's use of that conviction as a death penalty aggravating factor in his subsequent prosecution for the Sandoval murder.  ECF No. 189 at 6-7.  Caro claims that because he was facing a lengthy sentence even with a guilty plea, the plea bargain provided no benefit and Dene was, therefore, duty-bound to advise him to reject the plea agreement and to proceed to trial.  *Id.* at 7.  This claim is contrary to the evidence in the record.

It is true that "[b]efore deciding whether to plead guilty, a defendant is entitled to 'the effective assistance of competent counsel.'"  *Padilla*, 559 U.S. at 364.  The factual record, however, sustains the Court's finding that Dene's assistance was not ineffective under the circumstances and that Caro obtained significant benefit from the plea bargain.  Indeed, the Government's case against Caro was overwhelming and included a non-inmate eyewitness, surveillance video of the attempted murder, the homemade knives used in the attack, and DNA evidence directly linking both Caro and Moreno-Marquez to the assault.  ECF No. 182 at 14-18; ECF No. 183 at 12-13.  In the face of this evidence, it was Caro and Moreno-Marquez who proposed the linked plea agreements, and it was Caro who directed Dene to "work[] to obtain a plea agreement" in which Caro would plead guilty to the conspiracy to commit murder in exchange for the Government allowing fellow gang member Moreno-Marquez to plead guilty to the lesser offense.  ECF 189-1 ¶ 5.   Clearly, Caro knew the Government's case was overwhelming and that the only way to accomplish his goal of helping Moreno-Marquez was through a linked plea bargain.

7

Even though Dene correctly advised him that he would receive a very long sentence as a result of the plea bargain, Caro directed Dene to work to obtain the agreement to benefit his younger associate.  ECF No. 189 at 3.  Caro acknowledged and dismissed Dene's advice stating that the prospect of a long sentence did not matter to him because he was already serving a 360-month sentence and "he wasn't going anywhere."  ECF No. 189-1 ¶ 6.  Thus, there can be no dispute that the record establishes that Dene fully advised Caro that the plea bargain would not benefit him personally in any way and, implicitly, Caro could do just as well by going to trial.  Caro admits that he understood and acknowledged that advice, but decided to enter into the plea bargain anyway for the purpose of benefitting Moreno-Marquez.

Caro's reliance on *Padilla* as authority to support his claim that Dene was deficient is misplaced.[1]  In *Padilla*, defense counsel affirmatively misled the defendant by telling him that his guilty plea would have no collateral consequence to his immigration status when the law plainly stated that his deportation was ***mandatory***.  Caro does not allege that Dene provided him with erroneous legal advice about the consequences of his plea bargain, but instead claims that Dene should have ***predicted*** how the Government might make use of his plea bargain in a ***possible*** death penalty prosecution for the Sandoval murder.  Unlike *Padilla*, the collateral consequence that Caro complains about was not mandated by law and, at the times he signed the plea agreement and entered his guilty plea, June 29, 2004 and August 3, 2004, respectively, it was not at all certain that the prosecution would even be allowed to seek the death penalty for the Sandoval murder.  This is true because all federal death penalty cases must be approved by the United States Attorney General after a detailed, fact-driven review and approval process (the

---

[1] Caro's cause of action predates the Supreme Court's decision in *Padilla* and it is, therefore, dubious that *Padilla* should be applied retroactively to this case.  *See United States v. Mathur*, 685 F.3d 396 (4th Cir. 2012) (holding that *Padilla's* requirement that defense lawyers inform clients whether plea agreements carry risk of deportation is not retroactively applicable to cases on collateral review).  A detailed discussion of this issue is not necessary to resolve Caro's Rule 59(e) motion.

"death penalty protocol").  *See* ECF No. 189 at 4 (("The government notified this Court of its intent to prosecute Mr. Caro for the death of Mr. Sandoval and to seek the death penalty against Mr. Caro in December 2004, and in January 2005, the Court appointed counsel to represent Mr. Caro in pre-indictment proceedings."); *see also* United States Attorneys' Manual, § 9-10.000, Capital Crimes (setting forth the death penalty protocol to include consultation with the Department of Justice's Capital Case Section, consultation with family of victim, requirement for Capital Review Committee to meet with defense counsel and representatives of United States Attorney's Office, and final approval by the United States Attorney General).  At all times material to this case, the death penalty protocol had not been completed and the Attorney General had not decided whether to authorize the death penalty for the Sandoval murder.

Also in contrast to Caro, *Padilla* had been a lawful, permanent resident of the United States for over 40 years, had served honorably in the armed forces during the Vietnam War, and his immigration status was clearly a concern that he raised with his counsel.  Caro, on the other hand, was already serving a lengthy prison sentence and had already admitted to the Sandoval murder.  Finally, *Padilla's* plea bargain provided only for the disposition of the charges against him, while Caro sought a linked plea agreement to obtain a favorable disposition for a younger fellow gang member.

Caro also argues that Dene should have directed him to reject the plea agreement and proceed to trial.  Dene speculates that Caro would have followed his recommendation to go to trial.[2]  This statement, in addition to being rank speculation about Caro's state of mind and intentions, overlooks the basic principle that "[a] defendant . . . has the ultimate authority to determine whether to plead guilty . . . ."  *Florida v. Nixon*, 543 U.S. 175, 187 (2004) (internal quotation marks and citations omitted).  The record makes it clear that Dene provided accurate

---

[2] Tellingly, Caro fails to provide the Court with a corroborating declaration.

legal advice to Caro about the consequences of his guilty plea, that Caro directed Dene to obtain a linked plea agreement to help Moreno-Marquez, and that it was ultimately Caro's decision, notwithstanding Dene's admonition that the plea bargain did not personally benefit him, to enter into the plea agreement to obtain the benefit of a lesser sentence for Moreno-Marquez. For these reasons, the evidence in the record supports the Court's finding that Dene did not provide ineffective counsel and, therefore, that finding was not clearly erroneous.

> **2.      The Court's Application of the "Rational" Standard Stated in *Padilla v. Kentucky*, 559 U.S. 356 (2010) is Supported by the Evidence.**

Caro argues that the Court misapplied the standard stated in *Padilla v. Kentucky*, 559 U.S. 356 (2010). Of course, in *Padilla* the Supreme Court held that counsel was deficient when she provided the defendant with erroneous advice about the plea bargain's effect on his immigration status. The *Padilla* court, however, did not address the prejudice prong of the *Strickland* test, instead remanding to the state courts to consider that issue. *Id.* at 369.

The Supreme Court did describe the "high bar" set for a defendant seeking to overturn a conviction arising from a guilty plea on the ground that his plea was the product of ineffective assistance of counsel, reiterating that "to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Id.* at 372. Caro's Rule 59(e) argument appears to be that Dene's speculative declaration alone was sufficient to meet the "high bar." That argument is incorrect. First, the Court correctly found that the Government's case against Caro was overwhelming. Second, in the face of the overwhelming evidence against both Caro and Moreno-Marquez, the Court correctly found that it would not have been rational for Caro to reject the linked plea agreement and abandon the plea bargain's primary objective of benefitting Moreno-Marquez.

### a.   The Court Properly Evaluated Caro's Defenses and Sentencing.

Caro cites to Moreno-Marquez's sentencing to argue that the Court committed clear error in describing the strength of the Government's case against him and that it erred by ignoring the possibility that "Caro had a viable defense." ECF No. 205 at 8. Caro posits that the Court should have considered that "a valid defense could have been to challenge the strength of the Government's case, including its ability to prove a conspiracy." *Id.* at 6-7. But Caro advances no new argument to support this theory and merely relies on a colloquy between the Court and the Government at Moreno-Marquez's sentencing. After the Court requested an explanation for the difference in the handling of the two cases, the Government explained that the two dispositions, ***which had been sought by Caro***, were dependent on one another and were considered to be in the best interests of the United States because it believed that Caro was more culpable and because of inherent and obvious issues involved in trying a case with an uncooperative victim and unclear videos. ECF No. 184 at 13. The eyewitness and DNA evidence were still present and the case against both defendants was overwhelming. ECF No. 183 at 12-13. The record as a whole provides substantial evidence to support a finding that Caro, much less Dene, understood the strength of the Government's case and sought a linked plea bargain to benefit Moreno-Marquez, since he (Caro) was already serving a lengthy prison sentence.

### b.   Under the Circumstances, It Was <u>Not</u> Rational for Caro to Reject the Linked Plea Agreements.

As described above, the Government's evidence against Caro and Moreno-Marquez was overwhelming. The two co-defendants plainly recognized this because Caro directed Dene to work to obtain a linked plea agreement that would benefit the younger Moreno-Marquez. Caro also recognized that he was already serving a lengthy 360-month prison sentence, "wasn't going

11

anywhere," and, therefore, was unconcerned that the plea bargain might result in an additional lengthy sentence. Under these circumstances, Caro's rejection of the linked plea agreements would *not* be rational because he would have scuttled the plea bargain's primary objective of helping the younger Moreno-Marquez leave the Bureau of Prisons while still relatively young.

Caro submits no statement to indicate he would have abandoned this objective if Dene had advised him that the guilty plea might be used to argue for the death penalty in the Sandoval trial. Moreover, Dene's speculative opinion that Caro would have gone to trial if he had so recommended, which stands alone, is inconsistent with the directive he was given to work to obtain the linked plea agreements. Moreover, the fact that Caro repudiated Dene's admonition that he would still receive a lengthy sentence under the plea agreement and, therefore, by implication would fare no worse if he went to trial, contradicts this speculation.

### 3.     Caro is Not Entitled to a Certificate of Appealability

Caro has not made a substantial showing that his constitutional rights have been violated and is not entitled to a certificate of appealability.

As described above, Dene's representation met the *Strickland* standard for effective assistance of counsel because it did not fall below the reasonable standard of representation and, even if Dene erred, Caro did not suffer prejudice. A certificate of appealability is appropriate only if the applicant has made "a substantial showing of the denial of a constitutional right . . . [which] includes showing that reasonable jurists could debate (or for that matter agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, n.4 (1983)). The certificate of

appealability determination requires an overview of the claims in a habeas petition and a general assessment of their merits. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

In this case, the evidence in the record supports the Court's finding that Dene's assistance was not deficient and, even if deficient, under the circumstances it would not have been rational for Caro to abandon his goal of obtaining linked plea agreements to help Moreno-Marquez leave the Bureau of Prisons while still relatively young, an option not available to Caro because of the lengthy prison sentence he was already serving. Caro made the "conscious decision to accept both the benefits and burdens of [the linked plea bargain]," a "decision [t]hat may not be lightly undone by buyer's remorse on the part of one who has reaped advantage from the purchase." *United States v. Fugit*, 703 F.3d 248, 260 (4th Cir. 2012). Accordingly, the evidence in the record shows that Caro failed to meet *Strickland's* high bar to claim ineffective counsel in deciding to plead guilty and reasonable jurists would not conclude otherwise.

### 4.     Caro's Claims are Time-barred.

Caro's motion to amend or alter judgment should be dismissed because the § 2255 Motion from which it originated was untimely filed. 28 U.S.C. § 2255 imposes a definitive one-year time limit on a defendant's right to collaterally attack a criminal conviction and sentence. 28 U.S.C. § 2255(f)(4) states: "The [one year] limitation period shall run from the latest of . . . (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence."

Caro's argument that he did not learn of Dene's "omission" until March 2012 is unpersuasive. At least by February 13, 2007, Caro knew that his attempted murder conviction and sentence in this case had the potential to enhance his sentence in the capital case. ECF No. 189 at 4-5. Therefore, Caro, and counsel representing him continuously since August 22, 2007,

13

knew the salient facts underlying his § 2255 Motion, but did nothing until January 11, 2013.

Caro's § 2255 Motion should have been filed by February 12, 2008, at the latest.  Therefore,

Caro's claim was filed more than eight years and three months after final judgment and almost

six years after Caro knew, or could have discovered through the exercise of due diligence, the

facts supporting his claim.  Thus, Caro's § 2255 motion is time-barred and should be dismissed

on that ground.

## CONCLUSION

Based on the forgoing, and the record before this Court, the United States respectfully

requests that the Court deny Caro's Motion to Alter or Amend Judgment Pursuant to Federal

Rule of Civil Procedure 59(e), dismiss the claims with prejudice, and strike this matter from the

Court's docket.

Respectfully submitted,

ANTHONY P. GIORNO
Acting United States Attorney


Dated:  July 2, 2015                      /s/ Rick A. Mountcastle
                                          Rick A. Mountcastle, VSB No. 19768
                                            Assistant United States Attorney
                                          Lily Jenkins
                                            Third Year Law Student Admitted to Practice
                                          United States Attorney's Office
                                          P. O. Box 1709
                                          Roanoke, VA 24008-1709
                                          Tel: (540) 857-2254; Fax: (540) 857-2283
                                          Email: rick.mountcastle@usdoj.gov

14

C E R T I F I C A T E

I certify that on July 2, 2015, I caused the foregoing Response in Opposition to Defendant's Motion to Alter or Amend Judgment Pursuant to Federal Rule of Civil Procedure 59(e) to be filed with the Clerk of the Court using the CM/ECF system, which will send notification of this filing to counsel of record for the defendant.

/s/ Rick A. Mountcastle
Rick A. Mountcastle
Assistant United States Attorney

15